CADBURY BEVERAGES,
INC., Plaintiff,

v.

COTT CORPORATION and
Cott Beverages USA,
Inc., Defendants.

No. 92 Civ. 6207 (KTD).

United States District Court,
S.D. New York.

April 11, 1994.

Robin, Blecker, Daley & Driscoll, New York City, for plaintiff; Albert Robin, Howard B. Barnaby, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for defendants; Miriam L. Siroky, Bettina Elias, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff, Cadbury Beverages, Inc. ("Cadbury") instituted this action against defendants Cott Corporation and Cott Beverages USA, Inc. ("Cott USA") for trademark infringement pursuant to § 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a). Subsequently, Cadbury moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Cott Corporation and Cott USA responded by cross-moving for summary judgment. For the following reasons, the cross-motion for summary judgment is granted, and Cadbury's motion for summary judgment is denied.

## BACKGROUND

Cadbury, a Delaware corporation, owns several registered "Cott" trademarks for soft drinks in the United States dating back to 1951.[1] Cadbury sells Cott soft drink concentrates, and it also licenses other distributors to bottle and sell finished Cott soft drinks.

Cott Corporation is a Canadian corporation, and it owns the trademark rights to the "Cott" name in Canada. It first acquired these rights in 1968 from Cadbury's predecessor. In addition, Cott Corporation produces, packages, and distributes private label soft drinks, which it sells principally in the United States and Canada. "Private label" beverages are those labeled with a store's brand name and offered to consumers at prices generally lower than those of leading national brands. In Canada, Cott Corporation sells some soft drink products under the name "Cott," but it does not sell any soft drinks under the name "Cott" in the United States.

Cott Corporation also sells securities on the NASDAQ stock exchange in the United States. More importantly, as required by law, it makes use of its corporate name in connection with the listing. For instance, it places its corporate name on materials required to be filed with the Securities and Exchange Commission and on materials addressed to shareholders.

Cott USA is a wholly-owned subsidiary of Cott Corporation. It distributes the Cott Corporation's private label soft drinks in the United States. None of the private label products distributed in the United States by Cott USA use the trademark "Cott," and the company's name does not appear on any consumer packaging in the United States. The only direct purchasers of Cott USA's private label beverages are the purchasing agents for retail stores. Cott USA does use the "Cott" name in connection with its private label soft drink sales in the United States on letterhead, invoices and other communications with retail purchasing agents.

## DISCUSSION

■ The facts in this case are not in dispute. The parties disagree only as to the legal conclusions to be drawn from these facts. *See* Pl.Mem. of Law at 5. Therefore, no need for a fact-finding inquiry exists here, and this case is ripe for determination on summary judgment. Fed.R.Civ.P. 56(c). *See Lois Sportswear, U.S.A. v. Levi Strauss & Co.*, 799 F.2d 867, 876 (2d Cir.1986) ("The only issue the parties dispute is the application of these facts to the *Polaroid* test and likelihood of confusion analysis. This is a legal issue which was appropriate ... for summary judgment."); *Roquefort v. William Faehndrich, Inc.*, 303 F.2d 494, 497–98 (2d Cir.1962) (where no genuine issue of material fact exists, summary judgment is appropriate as to a Lanham Act dispute). The crucial issue here, as in all Lanham Act trademark infringement actions, is whether the use of the trade name is likely to confuse an appreciable number of ordinary prudent purchas-

---

1. All facts herein are drawn from the parties' Local Rule 3(g) statements as well as submitted affidavits.

ers as to the source of the product. *Western Publishing Co. v. Rose Art Indus., Inc.,* 910 F.2d 57, 59 (2d Cir.1990); *Windsor, Inc. v. Intravco Travel Ctrs., Inc.,* 799 F.Supp. 1513, 1521 (S.D.N.Y.1992). In other words, the issue is whether the public is likely to be confused as a result of the defendants' use of Cadbury's "Cott" trademark.

■ The issue of "likelihood of confusion" turns on consideration of several factors: (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner of the mark will bridge the gap; (5) actual confusion; (6) the defendant's good or bad faith in adopting its mark; (7) the quality of defendant's products; and (8) the sophistication of the buyers. *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). "No single *Polaroid* factor is determinative. Rather each must be considered in the context of all the other factors, and from a balance of these determinations, one is able to reach the ultimate conclusion, whether there is a likelihood of confusion between the two parties' products." *Plus Prods. v. Plus Discount Foods, Inc.,* 722 F.2d 999, 1004 (2d Cir.1983).

■ Based upon a consideration of all the *Polaroid* factors, defendants are entitled to summary judgment as to the issue of "likelihood of confusion." In particular, the proximity of the products and sophistication of the buyers establishes that there is no likelihood of confusion. Primarily, the fact that defendants' products do not use the "Cott" name, considered in conjunction with the fact that retail purchasing agents are supposedly sophisticated, convince me that the defendants' use of the "Cott" mark will not confuse an appreciable number of purchasers as to the source of the product.

■ In assessing the proximity factor, "the court considers not only the nature of the services themselves, but also the structure of the relevant market in which they are sold, ... the channels of trade through which they are promoted, and the class of customers for whom they are designed and to whom they are sold." *Windsor,* 799 F.Supp. at

1523, *citing Vitarroz Corp. v. Borden, Inc.,* 644 F.2d 960, 967 (2d Cir.1981).

Defendants use the "Cott" name primarily in conjunction with their sales of private label soft drinks to retail chains, where their direct purchasers are not the public, but retail purchasing agents. Cadbury, on the other hand, uses the "Cott" name to sell finished Cott soft drinks to the general public. Thus, the ordinary consumer cannot be confused when he or she purchases the defendants' product because that product is not called "Cott." Although not involving the soft drink industry, other cases have held that even where products are sold in a similar fashion, no violation of the Lanham Act occurs. For example, in *Windsor,* the plaintiff, a travel services company, sold pre-packaged tours directly to individuals and advertised only in the mass media. The defendant sold reduced price airfares to student exchange organizations and advertised only in trade publications, the court held that the two parties operated in different channels of trade and provided different services to separate classes of customers. As a result, public confusion was not likely. *Windsor,* 799 F.Supp. at 1523. *See also Edison Bros. Stores, Inc. v. Cosmair, Inc.,* 651 F.Supp. 1547, 1557 (S.D.N.Y.1987) (fashion industry); *Oxford Indus. Inc. v. JBJ Fabrics Inc.,* 6 U.S.P.Q.2d (BNA) 1756, 1761, 1988 WL 9959 (S.D.N.Y.1988) (garment industry); *In re Shipp,* 4 U.S.P.Q.2d (BNA) 1174, 1176 (Trademark Trial & App.Bd.1987) (dry cleaning industry).

The purchasers who do encounter the name "Cott" when they purchase defendants' product are sophisticated. Retail purchasing agents are professionals required to know the soft drink market and know manufacturers in order to successfully determine which products to purchase. As such, they would know the difference between plaintiff's product and defendants' product. Consequently, these purchasers are not likely to be confused by the existence of the competing soft drinks. *Oxford Indus. Inc.,* 6 U.S.P.Q.2d (BNA) 1756, 1763, 1988 WL 9959 (S.D.N.Y. 1988) ("Professional buyers, who are highly sophisticated and knowledgeable about converted fabric and the clothing industry, are

the individuals who principally deal with both plaintiff and defendant.... [As] sophisticated consumers, [they] can readily differentiate between plaintiff and defendant and their respective products."); *In re Shipp*, 4 U.S.P.Q.2d (BNA) 1174, 1176 (Trademark Trial & App.Bd.1987) (no likelihood of confusion among "owners and operators of dry cleaning establishments" because the class of purchaser is "relatively sophisticated and discriminating in matters pertaining to the dry cleaning industry, ... even where such services and goods are offered under virtually identical marks."). Thus, because of the proximity of the products and the sophistication of the retail purchasing agents, the defendants' use of the "Cott" name is not likely to confuse an appreciable number of ordinary prudent purchasers.

Cadbury argues that the defendants, like Cadbury, sell bottled soft drinks to supermarkets and specialty food stores and that defendants' corporate names are confusingly similar to Cadbury's "Cott" trademark and Cott products. As set forth above, an application of the *Polaroid* factors and the "likelihood of confusion" test to the undisputed facts, however, establishes that the defendants' use of the "Cott" trademark will not confuse the ordinary purchaser as to the source of the two products. Even when weighing the *Polaroid* factors, other than proximity of products and buyer's sophistication, in plaintiff's favor, the balance still results in a conclusion that the defendants' use of the "Cott" name is not likely to cause confusion.

For instance, Cadbury's "Cott" trademark may in fact be strong, and the defendants in this case do employ the identical "Cott" name. Public confusion is, nevertheless, not likely to result from defendants' use of Cadbury's "Cott" name because the parties' products are marketed and sold in a distinctly different manner. The mark's strength and the defendants' use of the identical "Cott" name simply does not amount to a Lanham Act violation because the proximity of the products makes it unlikely that an appreciable number of consumers will be confused as to the source of the product.

*See Oxford Indus. Inc.*, 6 U.S.P.Q.2d (BNA) at 1761.

"Bridging the gap," another *Polaroid* factor, refers to Cadbury's interest in preserving avenues of expansion into the defendants' field under its own "Cott" trademark. *Windsor*, 799 F.Supp. at 1524. Cadbury argues that the defendants have already "bridged the gap" by selling identical products in the same channels of trade, namely marketing soft drink beverages to the general public. In fact, the gap has not been bridged because the plaintiff markets finished Cott soft drinks to consumers, while defendants furnish private label soft drinks to retail outlets. Further, since Cadbury has not expressed a desire to sell private label soft drinks, I see no reason for preserving a market currently occupied by defendants for potential future expansion by Cadbury.

■ As for the *Polaroid* factors of actual confusion and inferior quality of defendants' products, Cadbury correctly points out that these are not necessary for an overall finding of likelihood of confusion. *Lois Sportswear*, 799 F.2d at 875 ("[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act."). Cadbury argues that, given the same Cott name, actual confusion is inevitable, and any defects in defendants' products will undoubtedly tarnish Cadbury's reputation. Since Cadbury has not discovered any instance of actual confusion among its customers, the court may infer that consumer confusion is not likely to occur. *See Affiliated Hosp. Prods., Inc. v. Merdel Game Mfg. Co.*, 513 F.2d 1183, 1188 (2d Cir.1975) ("[I]t is certainly proper for the trial judge to infer from the absence of actual confusion that there was also no likelihood of confusion."). More importantly, reasonable consumers will not attribute any inferiority in the defendants' product to Cadbury, because the general public does not recognize defendants by the name "Cott."

Finally, Cadbury argues that defendants adopted the Cott mark in the United States with full knowledge of Cadbury's rights, thereby establishing the defendants' bad faith. Assuming this to be true, defendants' use of the "Cott" mark is still not likely to confuse an appreciable number of ordinary

prudent consumers because these consumers do not encounter the "Cott" name as it is used by defendants.

In sum, applying the *Polaroid* factors establishes that an appreciable number of consumers will not be confused as to the source of the products. In particular, the proximity of the products as well as the sophistication of the retail purchasing agents establish that the defendants' use of the "Cott" name does not amount to a Lanham Act violation. Thus, public confusion stemming from defendants' use of the "Cott" name is not likely, and the defendants are entitled to summary judgment as a matter of law.

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied, and Defendants' Cross–Motion for Summary Judgment is granted.

SO ORDERED.