**CBS INC., Plaintiff,**

v.

**David LIEDERMAN and William Liederman, Defendants.**

**No. 94 Civ. 1984 (KTD).**

United States District Court,
S.D. New York.

Oct. 20, 1994.

Satterlee Stephens Burke & Burke, New York City, for plaintiff CBS Inc.; Robert M. Callagy, of counsel.

Pryor, Cashman, Sherman & Flynn, New York City, for defendants William Liederman and David Liederman; Ronald Shechtman, of counsel.

*MEMORANDUM*

KEVIN THOMAS DUFFY, District Judge:

CBS Inc. ("CBS") commenced this action against David and William Liederman ("defendants") alleging trademark infringement, unfair competition, and trademark dilution under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), and New York statutory[1] and common law. CBS moved for a preliminary injunction and a temporary restraining order preventing the defendants from opening their proposed restaurant, named "Television City."

Since 1952, CBS has owned and operated "Television City," a facility located in Los Angeles, California designed for the production of television shows. On January 26, 1988, the service mark "Television City" was registered on the Principal Register in the United States Patent and Trademark Office in the name of CBS Inc., as U.S. Service Mark Registration No. 1,474,506. The mark was granted for the following categories: "for television production services" and "for entertainment services, namely the production and distribution of television programs, rental of television production facilities and the providing of tours of production facilities to the public." The facility has a somewhat storied past within American popular culture, having been the home to many of CBS' best television series. Today, many soap operas and game shows are produced at Television City, and hundreds of people descend upon the facility each day in order to be a member of a studio audience. The name "Television City" is shown numerous times each week in connection with these television shows, and can often be heard in the voice-over accompanying each show's introduction. In addition, there is a small retail operation at the facility which sells such memorabilia as T-shirts, pins, watches and the like, each bearing the name "CBS Television City."

The defendants are restaurateurs, who are in the process of opening a restaurant in New York City using the identical mark, "Television City." The proposed restaurant, which is to be a "theme" restaurant celebrat-

---

1. Plaintiff's state law claims are based on N.Y.Gen.Bus.Law § 368–d.

ing "the world of television" would be located at Sixth Avenue and 50th Street in Manhattan, directly across the street from Radio City Music Hall. The restaurant would not only serve food, but would have an entire section devoted to the sale of television memorabilia, such as T-shirts, sweatshirts, posters, and the like.

CBS asserts that the continued promotion and eventual opening of the proposed restaurant will mislead the general public and convey a false impression as to the restaurant's affiliation with CBS. Thus, CBS seeks to preliminarily enjoin defendants' use of the "Television City" mark in connection with their restaurant.

### Discussion

### I. Lanham Act Section 32 and Common Law Infringement Claims

Plaintiff claims trademark infringement under both the Lanham Act and the state common law. Infringement of a registered trademark is prohibited by § 32(1) of the Lanham Act. 15 U.S.C. 1114 (1988). Section 32(1) prohibits the use of a registered trademark without permission, in connection with the sale or advertising of goods or services, in a manner that is likely to cause confusion or mistake or to deceive the purchaser as to the source or sponsorship of the goods. 15 U.S.C. § 1114(1). *See Gruner + Jahr USA Pub. v. Meredith Corp.,* 991 F.2d 1072, 1075 (2d Cir.1993).

There can be no disputing that CBS is the owner of an incontestable, registered service mark—at least with regard to television production services. The strength of the mark within the television production field is not questioned. The central issue is whether this mark extends from the television production arena to the restaurant arena. The Second Circuit has held that "the strength of an incontestable registered trademark could be overcome by the use of a descriptive or weak portion of the mark." *Gruner + Jahr,* 991 F.2d at 1077. *See also W.W.W. Pharmaceutical Co. v. Gillette Co.,* 984 F.2d 567, 576 (2d Cir.1993) (incontestable registered trademark for "Sportstick" lip balm was not infringed by Gillette's "Sport Stick" deodorant); *Western Pub. Co. v. Rose Art Indus.*

*Inc.,* 910 F.2d 57, 60 (2d Cir.1990); *Pirone v. MacMillan, Inc.,* 894 F.2d 579 (2d Cir.1990) (observing that registration does not remove proper noun from general language or reduce it to exclusive possession of registrant for all purposes). Additionally, "a term that is in one category for a particular product may be in quite a different one for another." *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976).

The standard for granting preliminary injunctive relief in this circuit is well settled. CBS must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). *See Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985).

### (A) *Irreparable Harm*

Plaintiff asserts it will suffer irreparable harm from the public confusion it claims will result from defendants' use of their mark. This confusion will be heightened by the fact that other "theme" restaurants in the area are using marks under licensing agreements, and that the public may assume that defendants' restaurant is operated under a similar agreement with plaintiff.

Defendants argue that there is no possibility of irreparable harm for two reasons. First, they claim that CBS unreasonably delayed in bringing this action, thereby proving that there is no risk of irreparable harm. Second, they claim that CBS attempted to work out a licensing agreement whereby defendants would pay a sum of money in exchange for use of CBS' mark. Defendants argue that such an attempt at settlement is proof that legal remedies are adequate and therefore CBS cannot prove irreparable harm.

Generally, irreparable harm is assumed in trademark infringement cases, but when the plaintiff unreasonably delays in bringing suit, it can be seen as proof that

there was no irreparable harm. *See Comic Strip, Inc. v. Fox Television Stations, Inc.,* 710 F.Supp. 976, 980 (S.D.N.Y.1989); *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276 (2d Cir.1985); *MGM–Pathe Communications v. Pink Panther Patrol,* 774 F.Supp. 869, 873 (S.D.N.Y.1991) (citations omitted).

■ Defendants' claim of unreasonable delay appears to be without merit. The facts show that CBS first became aware of a plan to use their mark in April, 1993; that at that time they explained to defendants' architect that CBS would protest the use of its mark; and that CBS made attempts to discover the backers of the restaurant plan in order to take action against them. In July 1993, CBS learned from the New York Times that the proposed backers of the restaurant were the defendants, and set about attempting to locate them in order to bring the trademark matter to their attention. After pursuing what amounted to a false lead, CBS' agent finally contacted defendants in December 1993. The two sides exchanged communications regarding a possible settlement, but such discussions were not fruitful. CBS filed suit in March, 1994. This does not appear to be an unreasonable delay that might preclude a showing of unreasonable harm.

■ As to the settlement claim, it appears that the fact that CBS was willing to settle the dispute does not mean that no equitable remedy exists. To rule otherwise would result in punishing a party for attempting to settle, rather than encouraging parties to settle.

### (B) *Likelihood of Confusion*

■ Likelihood of confusion has been defined as the likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or simply confused, as to the source, sponsorship or affiliation of defendant's goods or services. *Western Pub. Co.,* 910 F.2d at 59. The law of this circuit with respect to likelihood of confusion was set forth in *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25

(1961). While not absolutely dispositive, the *Polaroid* factors establish a balancing test consisting of the following factors: (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the two marks; (4) the likelihood that the senior user of the mark will bridge the gap; (5) evidence of actual confusion; (6) the junior user's bad faith in adopting the mark; (7) the quality of the junior user's mark; and (8) the sophistication of the relevant consumer group. *Id.* at 495.

### (1) *Strength of the Mark*

The strength of a mark is "its tendency to identify goods sold as emanating from a particular, even if anonymous source." *See Mead Data Central v. Toyota Motor Sales, U.S.A., Inc.,* 702 F.Supp. 1031, 1035 (S.D.N.Y.1988). The strength of the mark is the central issue as it will determine the breadth of the mark's protection.

CBS established the first facility used exclusively for television production in 1952 and named it "Television City." Pursuant to 15 U.S.C. § 1065, CBS used the mark continuously for five consecutive years following its registration and it has become an incontestable mark. Although the mark covers only the words "Television City," the plaintiff uses it almost exclusively as "CBS Television City." In this regard, it seems that public recognition of the mark, to the extent that it is recognized, would be more for "CBS Television City," rather than for "Television City." Moreover, defendants' restaurant will not be broadcasting or producing any television programs. The mere similarity in the subject matter—that they both necessarily involve television—does not grant CBS protection in every area where television is an underlying theme.

Interestingly, there are various registrations similar to plaintiff's mark for the sale and repair of television sets and appliances. These other uses are no more likely to cause confusion with the plaintiff's mark than the defendants' proposed use.[2] The mark is

---

**2.** Plaintiff has never brought suit against any other company for infringement of the mark "Television City." In fact, plaintiff's agents ad-

mitted they were not even aware of the existence of such companies bearing similar marks to the plaintiff.

strong within the field of television production, but it is limited to that and related fields.

### (2) *Similarity of Marks*

Because the two marks are identical, this factor overwhelmingly favors CBS. Defendants argue that CBS uses their mark almost exclusively in conjunction with the "CBS" name and corporate logo. While this is true, the fact remains that the registered mark is merely for "Television City," and not for "CBS Television City." The fact that CBS often connects the two marks does not change the fact that defendants are attempting to use the identical mark that CBS has registered and would like to protect.

### (3) *Proximity*

This factor, which is the central issue in this case, measures whether it is likely that consumers will assume either that the junior user's product is associated with the senior user or is a product of the senior user. *See Centaur Communications, Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1226 (2d Cir.1987). *See Comic Strip, Inc. v. Fox Television Stations, Inc.,* 710 F.Supp. 976, 979 (S.D.N.Y.1989). In determining the proximity of the two "Television Cities," the court considers "content, geographic distribution, market position, and audience appeal." *Major League Baseball v. Sed Non Olet Denarius,* 817 F.Supp. 1103, 1120 (S.D.N.Y.1993) (*citing W.W.W. Pharmaceutical,* 984 F.2d at 573).

CBS produces television shows at Television City in California. The mark is to protect the name in that context. The intended use of defendants' proposed restaurant will primarily be serving food. There simply is little or no overlap between the services provided be each of the parties. Additionally, the production site and the proposed restaurant are on opposite coasts. While it is true that an avid fan of television may be attracted to both places, it does not mean that they would visit one at the expense of the other. The individual would have two entirely different experiences. CBS invites the public into CBS Television City to make up the audiences for its game shows and other television programs produced on site. While there, CBS provides a tour of the facility. Howev-

er, there was testimony that the public is excluded from CBS Television City for all purposes other than for seeing a show produced. One of the defendants testified that he called the studio and was informed that it was not open to the public. (Defs.' Br. at 9). Plaintiff did not conduct surveys or investigations with regard to the public recognition of CBS Television City. However, plaintiff nonetheless concludes that the name of a production studio has a nationwide reputation which will be damaged by a restaurant bearing the same name. There is little overlap of markets between plaintiff's and defendants' services. Accordingly, this factor favors a finding for defendants.

### (4) *Bridging the Gap*

This factor evaluates "whether the senior user of the mark is likely to enter the market in which the junior user is operating." *Centaur Communications Ltd.,* 880 F.2d at 1227. Trademark law protects a senior user's right to enter into a related field in the future. *Scarves by Vera, Inc. v. Todo Imports Ltd.,* 544 F.2d 1167, 1172 (2d Cir.1976). CBS claims in its papers that it is currently planning to open a full service restaurant near the Ed Sullivan Theater on West 57th Street in Manhattan. This proposed restaurant, which plaintiff has apparently acquired, is to be a "television theme restaurant … probably focusing on the history of television." (Pl.'s Reply Mem. of Law at 23). It must be noted that plaintiff's mark is afforded protection in the television production area and related areas only. Plaintiff's announcement that it is looking to enter the restaurant business is irrelevant to this claim. It is a competitive venture to that of the defendants, but since the restaurant business is not "related" to television production, CBS' mark does not necessarily protect this latest endeavor by CBS.

Plaintiff attempts to show that it has already bridged the gap with regard to restaurants because CBS operates an employee cafeteria named "Television City Cafe" at its Los Angeles facility. This establishment is far removed from the type of restaurant proposed by defendants. Additionally, the cafe operated by CBS is located within the

CBS' complex in California, and is not open to the public. Defendants' proposed restaurant is in New York City. CBS' maintenance of an on-site cafeteria for its workers is not sufficient to entitle it to protection under its mark. The on-site facility differs dramatically from that of the proposed restaurant, and does not mean that plaintiff has entered the restaurant business. In fact, the cafeteria is not being operated by CBS at all. Rather, it is run by Marriott through a contract with CBS. Clearly, these two eating establishments would not in any way compete with each other, and this argument is without merit.

### (5) *Actual Confusion*

This factor pertains to whether any consumers have actually been misled by the similarity of the two marks. In this case there has been no realistic opportunity for actual confusion because defendants' restaurant has not yet opened. While it was argued that reports of defendants' proposed restaurant have appeared numerous times in the media without mention of CBS' mark, this factor does not seem to favor either side. CBS acted before the restaurant opened and any actual confusion could arise, and it should not be penalized for so doing. Actual confusion is not an essential element in order to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source. "It would be unfair to penalize appellee for acting to protect its trademark rights before serious damage has occurred." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir.1986) (citation omitted). Therefore, this factor favors neither party.

### (6) *Junior User's Bad Faith*

This factor looks to whether the defendants "adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between [defendant's] and the senior user's product."

*W.W.W. Pharmaceutical*, 984 F.2d at 575 (*quoting Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir.1991) (citation omitted)). In the present case, while CBS argues for bad faith to be inferred, it fails to put forth any evidence that defendants chose this particular mark with the intent of capitalizing on any goodwill which CBS had acquired. *See W.W.W. Pharmaceutical Co., Inc.*, 984 F.2d at 575 ("[Plaintiff] has not put forth any evidence that [defendant] intended to promote confusion between the products or appropriate [plaintiff's] good will and therefore has not shown any bad faith on [defendant's] part."). Without more, it appears that defendants did not act in bad faith and this factor does not favor either side.

### (7) *Quality of Junior User's Product*

While defendants' restaurant is not yet open, there is no evidence to suggest that it will be anything but top quality.[3] CBS acknowledges this fact, yet makes the point that "[A] senior user is entitled 'to protect its reputation even where the infringer's goods are of top quality.'" *Berkshire Fashions, Inc. v. Sara Lee Corp.*, 725 F.Supp. 790, 799 (S.D.N.Y.1989) (*quoting Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259–60 (2d Cir.1987). However, because defendants' restaurant has not yet been opened, any discussion of the quality of the defendants' product would be speculative and the issue will not be addressed.

### (8) *Sophistication of the Consumers*

"As a general rule, sophistication of the consumer is a factor that will weigh against a finding of likelihood of confusion." *Comic Strip, Inc.*, 710 F.Supp. at 980 (citation omitted). Defendants' potential customers will be drawn from the general public and thus cannot be said to have unique qualities or sophistication. In fact, the only generalization which it would be possible to make regarding the restaurant's clientele is that many of them will undoubtedly be television watchers.[4]

---

**3.** In fact, there is evidence to suggest otherwise. Defendants' lease for the proposed restaurant requires that the establishment be a "first-class restaurant ... serving high quality food." (Defs.' Reply Br. at 40). Supposedly, other res-

taurants run by one of the defendants, including "Mickey Mantle's," are all of the highest quality.

**4.** In addition to the aforementioned *Polaroid* factors, the court of appeals has enumerated three more factors which may be applied at the discre-

CBS claims the areas are related on a broader scope. It claims that CBS Television City is a tourist attraction, as is the defendants' proposed restaurant. This argument assumes the court is willing to broaden the scope of the fields to a point at which there will be a relationship. However, an analysis of the primary function of each party's business is more appropriate. The primary function of the studio is to produce television programs, and this is attractive to the public. On the other hand, the primary function of the restaurant is to attract the public by way of a theme into their restaurant to eat. In other words, the latter endeavor relies on public tourism for its livelihood while the former does not.

Applying the *Polaroid* factors to the instant case, the court finds that there is no showing of likelihood of confusion sufficient enough to warrant the issuance of a preliminary injunction. The plaintiff has not demonstrated a likelihood of success on the merits nor sufficiently serious questions warranting litigation. CBS's mark protects it in the field of television production services. The mark does not insure its exclusive use of the mark "Television City" in all markets and all products.

## II. Lanham Act Section 43(a) and Common Law Unfair Competition Claims

■ As to plaintiff's claims under the Lanham Act, 15 U.S.C. 1125, and under common law, plaintiff failed to prove elements essential to recovery. In order to prevail on a claim for unfair competition, plaintiff must show actual public confusion of the defendants' product with the plaintiff's product to recover money damages. Alternatively, plaintiff must show a likelihood of success on the merits in order to get injunctive relief. *See W.W.W. Pharmaceutical,* 984 F.2d at 576. As discussed earlier, the plaintiff failed to sustain either showing. Plaintiff is not seeking money damages and, as discussed

earlier, has failed to prove a likelihood of confusion of the two "Television Cities."

## III. New York Anti–Dilution and Injury to Reputation Claims

■ Plaintiff also claims dilution of its mark under New York statutory authority. N.Y.Gen.Bus.L. § 368–d (McKinney 1984). Such a claim "rests on the allegation that a defendant is attempting to 'feed on the business reputation of an established distinctive trademark name.'" *W.W.W. Pharmaceutical,* 984 F.2d at 576 (quoting *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.,* 42 N.Y.2d 538, 545, 399 N.Y.S.2d 628, 632, 369 N.E.2d 1162, 1165 (1977)).

There are three elements to a dilution claim:

(1) distinctiveness of the mark, either that the mark is "truly of distinctive quality" or has acquired secondary meaning in the eyes of the public;

(2) likelihood of dilution, either as a result of blurring of product identification or the tarnishing of an affirmative association that a mark has come to convey; and

(3) predatory intent.

*Lobo Enters., Inc. v. Tunnel, Inc.,* 693 F.Supp. 71, 79 (S.D.N.Y.1988) (quoting *Sally Gee, Inc. v. Myra Hogan, Inc.,* 699 F.2d 621, 625–626 (2d Cir.1983).

### (1) *Distinctiveness or Secondary Meaning*

■ There has been no assertion that the mark has attained secondary meaning. The remaining issue is whether the plaintiff's mark is distinctive. Distinctiveness for dilution purposes can be analyzed much in the same way as strength of the mark for infringement purposes. *Mead Data Cent., Inc. v. Toyota Motor Sales,* 875 F.2d 1026, 1030 (2d Cir.1989) (citing *P.F. Cosmetique, S.A. v. Minnetonka, Inc.,* 605 F.Supp. 662, 672 (S.D.N.Y.1985)). A mark is distinctive if it is arbitrary, and is the opposite of descriptive

tion of the court. These factors can be helpful in further determining the likelihood that an appreciable number of consumers will be misled by a junior user's mark. These so-called *Centaur* factors are as follows: (a) the nature of the senior user's priority; (b) its delay in asserting its claim; and (c) the balance of harm and benefit that would result

from granting an injunction against the junior user's use of the mark. *Centaur Communication,* 830 F.2d at 1228 n. 2. *See Major League Baseball,* 817 F.Supp. at 1125. It appears that these factors are already considered through *Polaroid* factors and the preliminary injunction standard.

or generic. *Sage Realty Corp. v. Sage Group, Inc.,* 711 F.Supp. 134, 143 (S.D.N.Y. 1989). This court has found the mark to be descriptive of the nature of its service, and by definition, not "distinctive." Further, the plaintiff's mark is not "distinctive" as the strength of the mark is limited to the field of television production and there was no evidence of general public recognition.

### (2) *Likelihood of Dilution*

Since the mark is not distinctive nor has it attained secondary meaning, there is no need to determine the likelihood of dilution. The plaintiff is not entitled to protection under N.Y.Gen.Bus.L. § 368–d.

For the reasons set forth above, the plaintiff's motion for a preliminary injunction is denied.

SO ORDERED.