**HORN'S, INC., Plaintiff,**

v.

**SANOFI BEAUTE, INC. and Nina Ricci, Inc., Defendants.**

**No. 95 Civil 2994 (RJW).**

United States District Court, S.D. New York.

May 9, 1997.

Nims, Howes, Collison, Hansen & Lackert, New York City (Oliver P. Howes, Jr., Robert L. Powley, of counsel), for Plaintiff.

Curtis, Morris & Safford, P.C., New York City (Gregor N. Neff, William S. Frommer, Marilyn M. Brogan, Daniel G. Brown, of counsel) for Defendants.

## OPINION

ROBERT J. WARD, District Judge.

Defendants Sanofi Beaute, Inc. and Nina Ricci, Inc. move pursuant to Rule 56, Fed. R.Civ.P., for summary judgment. For the reasons that follow, defendants' motion is granted.

## BACKGROUND

Plaintiff Horn's Inc. ("Horn's"), a Connecticut corporation with its principal place of business in New York City, commenced this action against Sanofi Beaute, Inc. and Nina Ricci, Inc., alleging trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); common law trademark infringement and unfair competition; dilution and injury to business reputation in violation of N.Y. Gen. Bus. Law § 368–d; and deceptive trade practices in violation of N.Y. Gen. Bus. Law § 349.

Since 1975, Horn's has been in the business of fashion forecasting, providing consulting services to the fashion industry. Compl. at ¶ 5. In addition to its consulting services, Horn's publishes under the mark HERE & THERE. Its publications include six forecast publications, eleven reporting publications and four directories. Affidavit of Francine Horn ("Horn Aff.") ¶ 4. Horn's publications report on happenings in the fashion industry occurring in the United States ("here") and Europe ("there"). In 1983, Horn's registered the mark HERE & THERE with the United States Patent and Trademark Office (the "PTO"). According to the Registration Certificate, the mark was

registered in International Class 16 for a "monthly fashion report/ magazine" and in International Class 35 for "consulting services in the field of current fashions to fabric manufacturers and to high fashion design companies." Compl. Ex. 1.

Sanofi Beaute, Inc. ("Sanofi") is a subsidiary of Sanofi, Inc., which in turn is a subsidiary of the French company Sanofi ("Sanofi France"). Sanofi markets fragrances in the United States for the French company Parfums Nina Ricci S.A., an affiliate of Sanofi France. For many years, Sanofi has marketed fragrances, including L'Air du Temps, under the trademark NINA RICCI. The fragrances are sold to the public through high-end department stores, including Bloomingdale's, Saks Fifth Avenue and Nordstrom's.

In 1992, Parfums Nina Ricci S.A. began developing a new fragrance to be marketed worldwide under the name "Deci Dela." The name was chosen from the French opera "Veronique" by high-level executives of Parfums Nina Ricci S.A. The fragrance was launched in France in the fall of 1994, and in the United States on June 5, 1995. On May 17, 1994, Parfums Nina Ricci S.A. applied to have the mark DECI DELA registered with the PTO. During the pendency of the application, the PTO requested an English translation of "deci dela." Parfums Nina Ricci, S.A. notified the PTO that "deci dela" could be translated into English as "here and there."

DECI DELA was registered on October 24, 1995. Despite the fact that the Principal Register of DECI DELA indicates that the translation of the mark is "here and there," the PTO did not reject Parfums Nina Ricci S.A.'s application based on Horn's earlier registration of HERE & THERE. DECI DELA was registered in International Class 3, which covers perfumery and related items.

While Parfums Nina Ricci S.A.'s trademark application was pending, Horn's filed a complaint and moved for a preliminary injunction prohibiting the U.S. launch of DECI DELA. Judge Haight denied the request for an injunction *pendente lite,* finding that Horn's had failed to establish a likelihood of success on the merits and irreparable harm.

Defendants' motion for summary judgment followed.

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment is appropriate "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1352 (2d Cir.1994) (quoting *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990)), entitling the movant to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, "the Court must give full weight to the nonmoving party's evidence and draw every reasonable inference in its favor." *GMT Prods., L.P. v. Cablevision of New York City, Inc.,* 816 F.Supp. 207, 209 (S.D.N.Y.1993) (citing *Ambook Enterprises v. Time, Inc.,* 612 F.2d 604, 611 (2d Cir.1979)).

Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Summary judgment may be granted when no reasonable trier of fact could find in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Second Circuit has held that summary judgment "in a trademark action may be appropriate in certain circumstances, where the undisputed evidence would lead only to one conclusion as to whether confusion is likely." *Cadbury Beverages, Inc. v. Cott Corp.,* 73 F.3d 474, 478 (2d Cir.1996) (citations omitted).

To prevail on a claim of trademark infringement in violation of the Lanham Act, plaintiff must prove "1) that it has a valid mark that is entitled to protection under the Act, and 2) that use of the defendant's mark infringes, or is likely to infringe, the mark of

the plaintiff." *Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508 (2d Cir.1997) (citations omitted). Additionally, in order to succeed on claims of trademark infringement and false designation under sections 32(1) and 43(a) of the Lanham Act, respectively, plaintiff must show that "an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.*, 984 F.2d 567, 571 (2d Cir.1993) (citations omitted) It is this likelihood of confusion analysis that is at the heart of both of plaintiff's Lanham Act claims.

## II.  *The Protectability of Horn's Mark*

The "scope of protection afforded the mark is determined by which of four categories of terms it falls into. In ascending order of strength, these are: 1) generic, 2) descriptive, 3) suggestive, and 4) arbitrary or fanciful." *Merritt Forbes & Co. Inc. v. Newman Investment Securities, Inc.*, 604 F.Supp. 943, 953 (S.D.N.Y.1985). The following illustration demonstrates the distinctions between the categories: "[T]he word 'apple' would be arbitrary when used on personal computers, suggestive when used in 'Apple–A–Day' on vitamin tablets, descriptive when used in 'Tomapple' for combination tomato-apple juice and generic when used on apples." *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 583 (2d Cir.1993) (citation omitted).

■ A generic mark is the name of the product itself and is not entitled to protection under the Act. Descriptive marks "describe[ ] a product's features, qualities or ingredients in ordinary language, and may be protected only if secondary meaning is established." *W.W.W.*, 984 F.2d at 572 (citing *McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979)). A mark has "secondary meaning" when "the consumer immediately associates the name of a product with its source." *Black & Decker Corp. v. Dunsford*, 944 F.Supp. 220, 226 (S.D.N.Y.1996). A suggestive mark "employs terms which do not describe but merely suggest the features of the product, requiring the purchaser to use 'imagination, thought and perception to reach

a conclusion as to the nature of the goods.' " *W.W.W.* 984 F.2d at 572 (quoting *Thompson Medical Co., Inc. v. Pfizer Inc.*, 753 F.2d 208, 213 (2d Cir.1985) (citation omitted)). Finally, fanciful terms are " 'coined' terms, which have no independent meaning, while arbitrary terms have a meaning, but one that is not usually associated with the particular product." *GMT Prods.*, 816 F.Supp. at 210 (citation omitted). Suggestive and arbitrary or fanciful marks are entitled to protection without proof of secondary meaning.

■ As noted by Judge Haight in his Memorandum Decision denying plaintiff injunctive relief, Horn's HERE & THERE mark is suggestive. Arguably, the words "here" and "there" could be descriptive in that the magazine reports on fashion news and trends from the United States and Europe, respectively. The words "here" and "there" alone, however, do not necessarily connote the United States and Europe— much less fashion news from the United States and Europe. Since a mental leap is required to arrive at the meaning Horn's attaches to HERE & THERE, the mark is suggestive, and it is entitled to protection under the Act without a showing of secondary meaning.

## III.  *Whether Sanofi Has Infringed on Horn's Mark*

■ Once it is determined that a mark is protectible under the Act, the issue becomes whether the public is likely to become confused as to the origin of the products in question. Plaintiff contends that "defendants' use of the French translation of plaintiff's mark HERE & THERE will provoke confusion among the retailers and manufacturers throughout the world of fashion who subscribe to the goods and services provided by plaintiff under its mark for the past twenty years." Pl.'s Mem. Opp. Summ. J. at 7.

Courts in the Second Circuit determine whether there is a likelihood of confusion by applying the following eight factors articulated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961):

the strength of [plaintiff's mark], the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, . . . defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers.

No one of the *Polaroid* factors is dispositive. *Estee Lauder*, 108 F.3d at 1510. While district court determinations as to each individual factor are questions of fact, *id.*, the application of the Polaroid factors to a particular case is a legal issue appropriately decided on summary judgment. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 876 (2d Cir.1986). The eight factors will be considered in turn.

## A. The strength of plaintiff's mark

The strength of the mark is measured by "its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *McGregor–Doniger*, 599 F.2d at 1131 (citation omitted). To determine the strength of the mark, courts look to two factors:

(1) the placement of the mark on the spectrum of marks; and (2) the marketplace recognition value of the mark. The first factor identifies the inherent potential of the mark at the time of its first use. The second describes its actual consumer recognition value at the time registration is sought, or at the time it is asserted in litigation to prevent another's use.

*Karmikel Corp. v. May Dep't Stores Co., Inc.*, 658 F.Supp. 1361, 1369 (S.D.N.Y.1987) (citation omitted). To ascertain the placement of the mark on the spectrum of marks, courts look to the classification of the mark. A suggestive mark is presumptively strong, as is a mark that is registered. Since plaintiff's mark is both suggestive and registered, it is entitled to a presumption of strength.

The second factor requires the court to measure the strength of the mark in terms of the recognition value of the mark "at the time it is asserted in litigation to prevent another's use." In the instant case, Horn's HERE & THERE may have been a strong mark to its purchasing public, professionals

in the fashion industry, but it has little or no strength in the perfume industry, obviating any likelihood of confusion based on recognition in the marketplace. *CBS Inc. v. Lieberman*, 866 F.Supp. 763, 766–67 (S.D.N.Y.1994) (limiting the strength of a mark to the television industry); *Hutchinson v. Essence Communications, Inc.*, 769 F.Supp. 541, 547 (S.D.N.Y.1991) (noting that marks may be "entitled to a high degree of protection in [one] field, but of limited and diluted strength in other fields"). The notion that the strength of Horn's HERE & THERE mark is properly limited to the fashion industry is supported by Horn's registering the mark as one for a "monthly fashion report/magazine" offering "consulting services in the field of current fashions to fabric manufacturers and to high fashion design companies." Compl. Ex. 1.

In sum, while Horn's mark may be strong in the fashion industry, that strength does not carry over to the field of fragrance. Thus, this factor weighs in as neutral, favoring neither party.

## B. The similarity of the marks

To determine "whether the similarity of the marks is likely to provoke confusion among prospective purchasers . . . a court should look at the general impression created by the marks, taking into account all factors that potential purchasers will likely perceive and remember." *Lang v. Retirement Living Publ'g Co., Inc.*, 949 F.2d 576, 581 (2d Cir. 1991) (citation omitted). Marks are similar when they are "the same in appearance, sound and meaning." *Revlon, Inc. v. Jerell, Inc.*, 713 F.Supp. 93, 98 (S.D.N.Y.1989); *see also Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 117 (2d Cir.1984) (noting that "Nintendo's use of the prefix 'Donkey' has no similarity in meaning or sound with the word 'King'").

Under the doctrine of foreign equivalents, "foreign words from common languages are translated into English to determine similarity of meaning and connotation in order to ascertain confusing similarity with English word marks." See 3 J. Thomas McCarthy, Trademarks and Unfair Competition § 23.36, at 23–82 (4th ed.1996). However, "[e]ven if

under the doctrine of [foreign] equivalents, the English and non-English words have a similar meaning and connotation, that is only one prong of the sound, sight and meaning trilogy of analysis. Similarity in meaning may well be outweighed by differences in sight and sound and other foundational factors." *Id.* § 23:37, at 23–84. Although the English translation of a foreign mark is used to determine similarity of meaning, the foreign mark is used when examining similarity in sight and sound. *Id.*

Applying these principles, it is clear that in meaning, DECI DELA and HERE & THERE are similar. DECI DELA can be translated into English as "here and there." That is where the similarities end, however. DECI DELA and HERE & THERE sound nothing alike, and further, the marks are quite different in appearance. Horn's HERE & THERE mark appears in lower case block letters with a circular ampersand in type much larger than the words "here" and "there." DECI DELA, on the other hand, appears in initial-capitalized cursive script, with the two words forming a semicircle over the mark NINA RICCI, which appears in upper-case block letters. That the prominent mark of NINA RICCI appears directly beneath DECI DELA further negates any confusion as to source. *Thompson Medical,* 753 F.2d at 218 (reversing finding that marks were confusingly similar where district court "examined only a 'fragment' of [defendant's] mark, instead of considering that [defendant's mark] is linked prominently to the BEN–GAY line of products."); *McGregor–Doniger,* 599 F.2d at 1134 (noting that "the fact that only one mark generally appears in close conjunction with the red plaid McGregor name increases the likelihood that the public, even when viewing the marks individually, will not confuse the two").

Although the marks are similar in meaning, such similarity is outweighed by the differences in appearance and sound. Furthermore, the appearance of the NINA RICCI mark directly beneath DECI DELA negates any likelihood of confusion as to the source of the fragrance.

## C. The competitive proximity of the products and the sophistication of the buyers

Plaintiff "publishes fashion magazines and reports and furnishes consulting services" to the fashion industry while defendants "manufacture and market a perfume." Memorandum and Opinion Denying Injunctive Relief at 8; Pl.'s Mem. in Opp. Summ. J. at 11. These two different products are not in competition.

According to plaintiff, confusion is likely because the two products, while non-competing, are related or "complementary." Horn's argues that "fragrance companies seek out plaintiff's assistance when developing new fragrances," Pl.'s Mem. in Opp. Summ. J. at 12, and thus "consumers are likely to connect two complementary products with the same source." *Plus Prods. v. Plus Discount Foods, Inc.,* 722 F.2d 999, 1008 (2d Cir.1983). The seminal case on complementary products is *Aunt Jemima Mills Co. v. Rigney & Co.,* 247 F. 407, 409–10 (2d. Cir.1917), *cert. denied,* 245 U.S. 672, 38 S.Ct. 222, 62 L.Ed. 540 (1918), where the Second Circuit observed that:

> [W]e think that goods, though different, may be so related as to fall within the mischief which equity should prevent. Syrup and flour are both food products, and food products commonly used together. Obviously the public, or a large part of it, seeing this trade-mark on a syrup, would conclude that it was made by the complainant [a manufacturer of pancake flour].... In this way the complainant's reputation is put in the hands of the defendants. It will enable them to get the benefit of the complainant's reputation and advertisement. These we think are property rights which should be protected in equity.

While the products in *Aunt Jemima Mills*—pancake flour and syrup —were indeed closely related and complementary in a real sense, the relationship between the products at issue in this case is less tangible. At most, plaintiff's consulting services and publications may help defendants sell their perfume. These products are not complementary, how-

ever, in the sense that consumers would be confused as to their source.

Although the parties' products are neither complementary nor in competition, their markets may overlap somewhat. According to plaintiff,

[a]gents and representatives of Horn's Inc. make substantial use of plaintiff's mark HERE & THERE when contacting retailers, who purchase both perfumery and HERE & THERE publications and services. Plaintiff is thus in the same fashion market that defendants have to directly approach for sales of their fragrance.

Horn Aff. ¶ 7. Additionally, plaintiff asserts that many of the stores to which Sanofi markets DECI DELA subscribe to their publications and use their consulting services, including Bloomingdale's and Saks Fifth Avenue. It is unlikely, however, that the people buying perfume for Saks and Bloomingdale's would be the same people attempting to forecast fashion trends for those stores by subscribing to Horn's publications. Moreover, as discussed more fully below, the sophistication of the buyers would tend to negate any confusion between the two different products.

In *Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245 (4th Cir.), *cert. denied*, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 245 (1970), the Fourth Circuit reversed a grant of summary judgment based in part on a finding that the products at issue were not proximate. In that case, the panel noted that the parties were in "different but sometimes interrelated industries," since the defendant sought "to sell its computers to many of the same companies that [plaintiff] solicits." *Id.* at 1252; *see also American Int'l Group, Inc. v. London American Int'l Corp. Ltd.*, 664 F.2d 348, 352 (2d Cir.1981) (finding that insurance-related services and complex financial services might well be complementary since both are provided to multinational corporations.)

Viewing the evidence in the light most favorable to plaintiff, there is a chance of confusion—albeit slight—based on the fact that the products are in interrelated fields and might fall into the hands of the same customers, i.e. retailers. The remaining *Polaroid* factors militate against confusion, however, outweighing the slight chance of confusion based on the proximity of the products.

Closely linked to proximity of the products is the sophistication of the buyers factor. *Cadbury Beverages*, 73 F.3d at 480. This factor requires that the court assess the likelihood of confusion "by examining the level of sophistication of the relevant purchasers of the plaintiff's and defendant's services." The *Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 965 (2d Cir.1996) (internal quotations and citation omitted)

Generally, "[t]he more sophisticated the consumers of a product are, 'the less likely it is that similarities in ... trade marks will result in confusion concerning the source or sponsorship of the product.'" *Paddington*, 996 F.2d at 587 (quoting *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1046 (2d Cir.1992)). Conversely, the likelihood of confusion is aggravated when "the competing products' marks are similar and the inexpensive products are in competitive proximity." *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 79 (2d Cir.1988). Since the products here are not in competitive proximity, and their marks are not similar, confusion based on sophistication of the purchasers is unlikely.

The relevant customers here are patrons of high-end department stores who purchase perfume at retail and fragrance buyers who purchase perfume wholesale for high-end department stores. Most patrons of high-end department stores are unlikely to be familiar with or subscribe to plaintiff's trade publications. Therefore, as discussed above, the only persons who might be confused are the buyers of perfume for department stores. Even assuming that these professional fragrance buyers were familiar with plaintiff's products, they would possess a high level of sophistication, militating against a likelihood of confusion as to source.[1] *Cadbury Bever-*

---

1. Plaintiff contends that since DECI DELA is the French translation for "here and there," sub-scribers to HERE & THERE will also be confused as to the source of DECI DELA. Pl.'s Mem.

*ages,* 73 F.3d at 481 (recognizing that "wholesale purchasers ... are assumed to be more sophisticated buyers and thus less prone to confusion") (internal quotations omitted). This factor, therefore, weighs in favor of defendants.

### D. The likelihood that plaintiff will "bridge the gap" and offer a product like defendants'

"This factor evaluates 'whether the senior user of the mark is likely to enter the market in which the junior user is operating.'" *CBS,* 866 F.Supp. at 767 (quoting *Centaur Communications, Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1227 (2d Cir. 1987)). Under trademark law, a senior user's right to enter a related field in the future is protected. *Id.* (citing *Scarves by Vera, Inc. v. Todo Imports Ltd.,* 544 F.2d 1167, 1172 (2d Cir.1976)).

Plaintiff contends that it has long intended to market clothing, fashion accessories and perfume under its HERE & THERE mark. In support of this assertion, plaintiff offers the declarations of Francine Horn and Ronald Collier. The Collier Declaration establishes that companies having an expertise in fashion often market perfumes. Collier Decl. ¶¶ 5, 6. In general, this is true. One is hard-pressed to think of a fashion designer whose name is not linked to a perfume—Calvin Klein, Donna Karan and Giorgio Armani quickly come to mind. That a provider of fashion-related consulting services and trade publications would enter the fragrance market, however, is hardly a foregone conclusion. Indeed, plaintiff has failed to show that it had any concrete plans to market a perfume.

Attached to the Horn Declaration as Exhibit 1 is a facsimile from Horn's to QVC, a home-shopping cable network. Far from evincing concrete plans to enter the fragrance market, the facsimile merely constitutes a sweeping proposal for a relationship between the two companies. The proposed relationship would be part "educational" and part "product productive." The words "per-

fume" or "fragrance," however, do not appear in the proposal.

Although plaintiff alleges that it "has been approached not only in the United States but in Japan to develop a perfume product under the HERE & THERE mark," Horn Aff. ¶ 12, there is no evidence of such discussions in the record. In *Lang v. Retirement Living Publishing Co., Inc.,* 949 F.2d 576 (2d Cir. 1991), New Choices Press, which published books and cassettes about charisma and how to get it, sued a magazine for those over 50 entitled "New Choices for the Best Years." The court noted that although plaintiff "had considered publishing several self-help guides," at the time, none of those plans had crystallized. *Id.* at 579. Finding that Lang's publication plans were "wholly speculative" *id.* at 582, the court concluded that Lang was unlikely to bridge the gap. As in *Lang,* none of Horn's plans to develop and market a fragrance is concrete, nor has any materialized. Since plaintiff has not shown that its plans to enter the fragrance market are more than "wholly speculative," this factor militates against finding a likelihood of confusion.

### E. Actual confusion between products

Although actual confusion need not be proven to prevail on a claim under the Lanham Act, *Lois Sportswear,* 799 F.2d at 875, courts in the Second Circuit are required to consider "whether any consumers have actually been misled by the similarity of the two marks." *CBS,* 866 F.Supp. at 768. The relevant confusion "is that which affects 'the purchasing and selling of the goods or services in question.'" *Lang,* 949 F.2d at 583 (quoting *Programmed Tax Systems, Inc. v. Raytheon Co.,* 439 F.Supp. 1128, 1132 (S.D.N.Y.1977)).

Plaintiff concedes that, to date, there has been no actual confusion. Pl.'s Mem. Opp. Summ. J. at 13. While "[i]t would be unfair to penalize [plaintiff] for acting to protect its trademark rights before serious damage has occurred, .... the complete absence of actual confusion evidence after a significant period of competition may weigh in a defendant's

---

Opp. Summ. J. at 7. Like fragrance buyers for department stores, however, the fashion retailers, wholesalers and designers who subscribe to

HERE & THERE would be equally sophisticated, decreasing the likelihood of confusion.

favor." *Lois Sportswear,* 799 F.2d at 875 (citation omitted). DECI DELA has been on the market in France for two and a half years and in the United States for almost two years. Since those periods are both significant, and plaintiff has made no showing of actual confusion, this factor weighs in defendants' favor.

### F. Bad faith on defendants' part

"This factor 'looks to whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product.'" *Lang,* 949 F.2d at 583 (quoting *Edison Bros. Stores, Inc. v. Cosmair, Inc.,* 651 F.Supp. 1547, 1560 (S.D.N.Y.1987)). According to defendants, "Sanofi's mark was chosen by high level executives of Parfums Nina Ricci in France based on the French opera 'Veronique.' No one involved in the selection of the name knew of Horn's or its 'Here & There' publications and services." Defs.' Mem. Supp. Summ. J. at 20 (citing Eloy Aff. ¶¶ 4, 6, 10). Plaintiff does not dispute this.

Rather, in an attempt to establish bad faith on the part of defendants, plaintiff points out that an entity called Givaudan–Roure was a subscriber to HERE & THERE. Defendants admit that Givaudan–Roure was involved in the development of the fragrance that was ultimately marketed under the trade name DECI DELA, but assert that "no one at Givaudan–Roure had any involvement whatsoever in the selection and adoption of the DECI DELA trademark." Eloy Aff. ¶ 7. Plaintiff has offered no evidence to refute this.

As a preliminary matter, the Court acknowledges that issues of bad faith are generally inappropriate for determination on summary judgment. *Pfizer Inc. v. Astra Pharmaceutical Prods., Inc.,* 858 F.Supp. 1305, 1326 (S.D.N.Y.1994). Relative to the other factors, however, this factor is accorded less weight. In *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* the Second Circuit stated that "intent is largely irrelevant in determining if consumers likely will be confused as to source. The history of advertising suggests that consumer reactions usually are unrelated to manufacturer intentions." 799 F.2d at 875.

The Second Circuit has also held that "[p]rior knowledge of a senior user's trade mark does not necessarily give rise to an inference of bad faith and may be consistent with good faith." *Arrow Fastener Co., Inc. v. Stanley Works,* 59 F.3d 384, 397 (2d Cir. 1995) (citation omitted); *see also Girl Scouts of the United States v. Bantam Doubleday Dell Publ'g Group, Inc.,* 808 F.Supp. 1112, 1129 (S.D.N.Y.1992) (noting that defendants' knowledge of plaintiff's marks and marketing success is not dispositive). Defendants in *Pfizer Inc. v. Astra Pharmaceutical Prods., Inc.* had pointed to the success of plaintiff's product, PROCARDIA XL, during sales meetings for and at the launch of their product, TOPROL XL. 858 F.Supp. 1305, 1327 (S.D.N.Y.1994). In granting defendants summary judgment, the Pfizer court held that such references did not establish bad faith or illegal conduct. *Id.* at 1327. Here the evidence of bad faith is scant to non-existent. Although defendants concede that they were aware of Horn's mark, plaintiff has not offered any evidence to show that defendants "deliberately sought to cause confusion between" DECI DELA and Horn's HERE & THERE, hoping to capitalize on plaintiff's reputation and good will. *Girl Scouts,* 808 F.Supp. at 1129.

Further, good faith may be found where defendant requests a trademark search or has relied on the advice of counsel. *W.W.W.,* 984 F.2d at 575. As part of Nina Ricci's application to register DECI DELA, an examining attorney for the PTO "searched the Office records and ... found no similar registered or pending mark which would bar registration under [the] Trademark Act." Decl. of Mark I. Peroff ("Peroff Decl."), Ex. 1. Trademark Counselors of America, P.C., defendants' counsel in the prosecution of the trademark registration, reported this to Nina Ricci by letter dated October 25, 1994. Peroff Decl., Ex. 2. Given the lack of evidence as to bad faith, the trademark search, and defendants' reliance on the advice of counsel, no reasonable trier of fact could find that defendants acted in bad faith.

## G. The quality of defendants' product

Plaintiff does not dispute that defendants' perfume is of high quality. Rather, Horn's argues that "[t]he lack of marked difference in quality between [the] goods supports the inference that they emanate from the same source." Pl.'s Mem. Opp. Summ. J. at 16 (quoting *Centaur*, 830 F.2d at 1228). This proposition was explained more fully in *Lois Sportswear*:

> It must be noted, however, that under the circumstances of this case the good quality of appellants' product actually may increase the likelihood of confusion as to source. Particularly in the post-sale context, consumers easily could [believe] quality jeans bearing what is perceived as appellee's trademark stitching pattern [are] a Levi's product.

799 F.2d at 875. In *Lois Sportswear*, both plaintiff and defendant manufactured jeans. Similarly, the parties in Centaur, the case cited by plaintiff, both published weekly marketing magazines. Since the products at issue here are completely different, *Lois Sportswear* and *Centaur* are distinguishable. The principle that comparable quality may generate or exacerbate confusion between two products is inapplicable here, where plaintiff provides publications and consulting services and defendants market a perfume.

## H. Weighing of the factors

In *Physicians Formula Cosmetics Inc. v. West Cabot Cosmetics, Inc.*, the Second Circuit stressed that "[t]he bottom line on a motion for summary judgment is not how many factors favor each side but whether a reasonable trier of fact might differ as to likelihood of confusion." 857 F.2d 80, 85 (2d Cir.1988).

The following is a summary of the Court's application of the Polaroid factors in the instant case: 1) Plaintiff's mark is strong, but its strength is limited to the fashion industry. 2) Plaintiff's and defendants' marks are similar in meaning, but this simi-larity is outweighed by differences in sight and sound. 3) The products are not proximate but there is a possibility that their markets might overlap. 4) This overlap would consist of professional fragrance buyers who are targeted by both plaintiff and defendants. Still, as consumers, professional fragrance buyers would be highly sophisticated, a fact which militates against confusion. 5) There has been no actual confusion. 6) Defendants acted in good faith. 7) Finally, although the parties' products may be of comparably high quality, they are so different that confusion based on quality is unlikely. Based on the record in this case, no reasonable trier of fact could find a likelihood of confusion. Even viewing the evidence in the light most favorable to plaintiff, the factors weigh heavily in defendants' favor. Defendants are therefore entitled to summary judgment, and plaintiff's claims under sections 32(1) and 43(a) of the Lanham Act are dismissed.[2]

## IV. *Pendent Common Law and New York State Claims*

Plaintiff also alleges dilution and deceptive trade practices under New York State law, as well as common law unfair competition and trademark infringement.

## A. Anti-dilution under New York law

■ To establish an anti-dilution claim, plaintiff must satisfy three elements:

> (1) distinctiveness of the mark, either that the mark is "truly of distinctive quality" or has acquired secondary meaning in the eyes of the public; (2) likelihood of dilution, either as the result of blurring of product identification or the tarnishing of an affirmative association that a mark has come to convey; and (3) predatory intent.

*W.W.W.*, 984 F.2d at 576–77. Even assuming plaintiff's mark is truly distinctive and might be diluted because of defendants' product, plaintiff has failed to show predatory intent. As discussed above, defendants acted

---

**2.** Moreover, according to defendants, Nina Ricci, Inc. "is in the fashion accessories business and has no responsibility whatsoever for fragrances." Ded. of John M. Spinnato in Opp. to Prelim. Inj. ¶ 4. Plaintiff has offered no evidence to refute this contention. Accordingly, Nina Ricci, Inc. is not properly a party to this litigation, and is entitled to summary judgment on this additional ground.

in good faith in adopting their mark. Moreover, both the New York Court of Appeals and the Court of Appeals for the Second Circuit have held that New York's anti-dilution statute, N.Y. Gen. Bus. Law § 368–d, applies only to very strong marks. The strength of plaintiff's HERE & THERE mark is limited to the fashion industry. As noted by the Second Circuit, "if a mark circulates only in a limited market, it is unlikely to be associated generally with the mark for a dissimilar product circulating elsewhere." *Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 875 F.2d 1026, 1031 (2d Cir.1989). The limited strength of plaintiff's mark and the lack of predatory intent are fatal to plaintiff's dilution claim.

**B. Deceptive trade practices under New York law**

■ Plaintiff's deceptive trade practices claim under New York General Business Law § 349 also fails. Section 349 is a consumer protection statute which, until 1980, could only be enforced by the State Attorney General. In that year it was amended to allow a private right of action. Although the statute is "aimed specifically at fraud against consumers, ... others—embracing 'any person who has been injured' including competitors—are given the right to sue by GBL §§ 349(h) and 350–d as an additional enforcement measure." R. Givens, Practice Commentaries, N.Y. Gen. Bus. Law § 349 (McKinney's 1996).

A competitor's right of action under § 349, however, is limited. Since "trademark or 'trade dress' infringement claims ... fall outside the original intent of §§ 349 and 350 ... federal courts have determined that the provisions require the sort of offense to the public interest which would trigger FTC intervention under 15 U.S.C.A. § 45." *Id.* (citing *Genesco Entertainment, a Div. of Lymutt Indus., Inc. v. Koch,* 593 F.Supp. 743 (S.D.N.Y.1984)). Plaintiff has not alleged any type of injury to the public, nor has it offered any proof to show that the public was in any way materially misled or deceived.

Further, plaintiffs have failed to satisfy the elements of a deceptive trade practices claim, i.e., "(1) that the defendant engaged in an act or practice that is deceptive or misleading in

a material respect and (2) that plaintiff suffered injury as a result thereof." *In re Houbigant,* 914 F.Supp. 964, 983 (S.D.N.Y. 1995). The Court's conclusion that defendants acted in good faith in adopting their mark precludes a finding that they deceived or misled Horn's or the public in a material respect. Finally, plaintiff's bare allegation that it has been injured by defendants' material deception may be sufficient to withstand a motion to dismiss, but will not survive the instant motion for summary judgment.

**C. Common law unfair competition**

■ The essence of an unfair competition claim under New York common law is "the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of goods." *Computer Assocs. Int'l, Inc. v. Computer Automation, Inc.,* 678 F.Supp. 424, 429 (S.D.N.Y.1987) (citing *Saratoga Vichy Spring Co., Inc. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir.1980)). Plaintiff's claim necessarily fails since both bad faith and a likelihood of confusion must be shown. The Court has already concluded, for purposes of plaintiff's Lanham Act claims, that there was no likelihood of confusion and that defendants acted in good faith. Likewise, those determinations apply here to defeat plaintiff's claim of common law unfair competition.

**D. Common law trademark infringement**

■ "To prevail on a claim of common law trademark infringement, plaintiff must establish that its mark is valid and legally protectible and that another's use of a similar mark is likely to create confusion as to the origin of the product." *United States Media Corp., Inc. v. Edde Entertainment, Inc.,* No. 94 Civ. 4849, 1996 WL 520901 at *10 (S.D.N.Y. Sept.12, 1996) (citing *Tri–Star Pictures, Inc. v. Leisure Time Prods., B.V.,* 17 F.3d 38, 43 (2d Cir.), *cert. denied,* 513 U.S. 987, 115 S.Ct. 484, 130 L.Ed.2d 396 (1994)). The Court's conclusion that there is no likelihood of confusion for purposes of plaintiff's Lanham Act

claims likewise defeats Horn's claim of trademark infringement under common law.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., is granted and the complaint is dismissed.

It is so ordered.